Charles J. DeHART, III, Trustee in Bankruptcy, Plaintiff,

v.

**FIRST FIDELITY BANK, N.A./SOUTH JERSEY (a/k/a First National Bank of South Jersey), and Midlantic National Bank/South successor by merger to Atlantic National Bank, Defendants.**

Civ. A. No. 86–2816.

United States District Court, D. New Jersey.

Dec. 2, 1986.

Evan W. Broadbelt, Manasquan, N.J., for plaintiff.

White & Williams, Cherry Hill, N.J., for defendant Midlantic Nat. Bank.

Kirkman, Mulligan, Bell, Armstrong and Serber, Atlantic City, N.J., for defendant First Fidelity Bank.

## OPINION

RODRIGUEZ, District Judge.

This case is presently before the court on a motion to dismiss pursuant to Fed.R. Civ.P. 12(b)(6) filed by defendant Midlantic National Bank/South ("Midlantic").

On April 26, 1979 Metropolitan Metals, Inc. and Delta Metals, Inc. ("the debtors") filed petitions under Chapter XI of the Bankruptcy Act of 1898[1] in the U.S. Bankruptcy Court for the Middle District of Pennsylvania ("the bankruptcy court"). By order of May 4, 1979 the bankruptcy court joined the two debtors for the purpose of administration and authorized the debtors to remain in possession of their respective bankruptcy estates. Martin S.

Roberts ("Roberts") was the president of the debtor corporations. Both corporations were adjudicated bankrupt on June 24, 1981 and Charles J. DeHart, III, the plaintiff in this action, was appointed the trustee in bankruptcy for the debtors.

On December 23, 1985 the trustee filed a complaint in the bankruptcy court against the defendants herein. On June 18, 1986 the parties agreed to dismiss the complaint without prejudice so that plaintiff could file a substantially identical complaint in this court. The parties stipulated that for the purpose of determining any matter relating to statutes of limitations, the complaint to be filed in this court would be deemed to have been filed and served on December 23, 1985, the filing date of the complaint in the bankruptcy court.[2]

The complaint filed here alleges, *inter alia*, that beginning in May 1979 Roberts, now deceased, executed a scheme to defraud the debtors and their creditors by embezzling third party checks payable to the debtors and by depositing the checks to his personal accounts at the defendant banks. The complaint also alleges that Midlantic's predecessor, Atlantic National Bank, and defendant First Fidelity Bank wrongfully accepted the checks into Roberts' personal accounts. With respect to Midlantic, the moving defendant, Roberts' statements of account show that the alleged unlawful activity took place in May and June 1979, ending on June 22, 1979.[3]

On July 30, 1986 Midlantic filed this motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) (Failure to state a claim upon which relief can be granted) on the grounds that the claim against it is barred by the applicable statute of limitations. The parties agree that the six year statute of N.J.Stat.Ann. § 2A:14–1 is applicable to the complaint and the only dispute is over whether the statute had run on

---

1. 11 U.S.C. §§ 701–799 (1976) (Repealed 1978).

2. See Stipulation of Counsel, dated June 18, 1986, Exhibit 1 to Plaintiff's Brief in Opposition to Defendant Midlantic National Bank's Motion to Dismiss ("opposition brief").

3. See Exhibit B to Midlantic's Memorandum of Law to Dismiss the Complaint.

December 23, 1985, the stipulated filing date.

## ANALYSIS

Fed.R.Civ.P. 12(b) provides in part:

If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 ...

The court has considered matters outside the pleading which the parties have presented and accordingly, will treat the motion as one for summary judgment. Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions, together with any affidavits on file, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c).

In support of its motion Midlantic contends that any wrongful acceptance of checks in Roberts' Midlantic account ended on June 22, 1979 and argues that the complaint is time-barred because it was not filed until December 23, 1985, more than six years after the acceptance. Plaintiff advances two arguments in opposition to the motion. First, plaintiff argues that the statute of limitations was tolled by the application of § 391 of the Bankruptcy Act of 1898, 11 U.S.C. § 791 (1976) (repealed 1978) and that the statute therefore did not begin to run until the debtors were adjudicated bankrupt on June 24, 1981. Secondly, plaintiff argues that under the "discovery rule" recognized in New Jersey, the statute did not begin to run until the trustee, in the exercise of reasonable diligence, discovered or should have discovered the facts giving rise to a cause of action against Midlantic.

## SECTION 391 ARGUMENT

■ The provisions of the Bankruptcy Act of 1898 apply to cases that were commenced under that act. *In re MacQuown,* 717 F.2d 859 (3d Cir.1983), and it is undisputed that the debtors' bankruptcy cases were commenced while the 1898 Act was in force. Section 391 of the Act provides:

All statutes of limitations affecting claims provable under this chapter and the running of all periods of time prescribed by this Act in respect to the commission of acts of bankruptcy, the recovery of preferences and the avoidance of liens and transfers shall be suspended while a proceeding under this chapter is pending and until it is finally dismissed.

Midlantic asserts that § 391 is not applicable to this case because the plaintiff's claims are not "claims provable under this chapter" within the meaning of § 391.

Plaintiff's reliance upon § 391 is misplaced. An analysis of the section shows that the claims referred to are the claims of creditors, not those of the trustee in bankruptcy. Collier states that:

Without that provision, creditors would be faced with the same difficult position as existed in the ordinary bankruptcy case under Chapters I to VII prior to the enactment of § 11f. If a creditor failed to institute suit, his claim might be barred by a statute of limitation even though a Chapter XI case did not culminate in confirmation of a plan and the consequent discharge of the debtor. If the creditor did institute suit, he might be taking a valueless step if the case did culminate in confirmation of a plan and the consequent discharge of the debtor. Those difficulties are avoided by the suspension of statutes of limitations under § 391.

9 *Collier on Bankruptcy* ¶ 12.01[1] (14th ed. 1978) (hereafter "Collier"). Thus it is apparent that "claims provable" refers to creditors' claims. In addition, § 63 of the Act, 11 U.S.C.A. § 103 (1976) (repealed 1978) delineates those debts of a bankrupt debtor which may be proved and allowed against the bankruptcy estate. Collier states that "The express language of § 63 ... clearly limits the class of provable

claims to those which can be asserted against the debtor in bankruptcy." 9 Collier ¶ 63.03 and footnote 1. Here the trustee's claim is not against either of the debtors and thus is not a provable claim. That claims of the trustee such as the one presented here were not intended to be encompassed within the "claims provable" language of § 391 is further buttressed by the observation that treating such claims as provable claims would render the remainder of § 391, dealing with statutes of limitations prescribed by the Act respecting the trustee's avoidance powers, a nullity.

Suits brought by the bankruptcy trustee are generally governed by § 11(e) of the Act, 11 U.S.C. § 29(e) (1976) (repealed 1978) which provides in relevant part:

> A receiver or trustee may, within two years subsequent to the date of adjudication or within such further period of time as the Federal or State law may permit, institute proceedings in behalf of the estate upon any claim against which the period of limitation fixed by Federal or State law had not expired at the time of the filing of the petition in bankruptcy.

If the cause of action arises under state law and if the state period of limitation expires after the two year period of § 11(e), then the state period of limitation applies. *See* 1A *Collier* ¶ 11.13 and cases cited in note 6. However, where the cause of action sued upon is one arising from a transaction which occurred after the bankruptcy proceedings were begun, § 11(e) will not apply, but the applicable federal or state statute of limitations will govern. *Id.*, note 10.

■ Here the scheme is alleged to have begun in May 1979, the month following the filing of the petitions, and the controlling statute of limitations is therefore N.J. Stat.Ann. § 2A:14–1,[4] without reference to the Bankruptcy Act.

## DISCOVERY RULE ARGUMENT

Plaintiff argues that the "discovery rule" should be applied so that the statute of limitations would not have begun to run until at least June 24, 1981, the date when the debtors were adjudicated bankrupt and the trustee was appointed.

Statutes of limitations are statutes of repose which reflect a public policy and underlying legislative judgment that claims for redress shall be settled within a reasonable time so that a party against whom a claim is asserted will have a fair opportunity to defend. *Tevis v. Tevis*, 79 N.J. 422, 430, 400 A.2d 1189, 1194 (1970). The discovery rule tempers this underlying policy by engrafting equitable considerations upon limitations statutes. It is a means of mitigating harsh and unjust results which sometimes flow from rigid adherence to a rule of law. *Lopez v. Swyer*, 62 N.J. 267, 273, 300 A.2d 563, 566 (1973). The court in *Lopez* stated:

> On the face of it, it seems inequitable that an injured person, unaware that he has a cause of action, should be denied his day in court because of his ignorance, if he is otherwise blameless. Yet such is the result that must follow if the years of the statute are to be inexorably calculated from the moment of the wrong, whether or not the party aggrieved knows or has reason to know that he has a right of redress.

*Id.* at 274, 300 A.2d at 566–67.

The Supreme Court of New Jersey first recognized the discovery rule in *Fernandi*

---

**4.** N.J.Stat.Ann. § 2A:14–1 (West Supp.1986) provides:

> Every action at law for trespass to real property, for any tortious injury to real or personal property, for taking, detaining, or converting personal property, for replevin of goods or chattels, for any tortius injury to the rights of another not stated in sections 2A:14–2 and 2A:14–3 of this Title, or for recovery upon a contractual claim or liability, express or implied, not under seal, or upon an account other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents and servants, shall be commenced within 6 years next after the cause of any such action shall have accrued.
>
> This section shall not apply to any action for breach of any contract for sale governed by section 12A:2–725 of the New Jersey Statutes.
>
> Amended by L.1961, c. 121, p. 723, § 1.

v. Strully, 35 N.J. 434, 173 A.2d 277 (1961). The court held that where a foreign object was left in the plaintiff's abdomen during an operation, the applicable two year statute of limitations at issue[5] did not begin to run until the plaintiff knew or had reason to know about the foreign object and the existence of the cause of action. Although the court limited its holding to the "class of cases" involving foreign objects, id. at 450, 173 A.2d 277, application of the discovery rule has since been extended to cases involving varying factual contexts.[6]

In analyzing statutes of limitations for the purpose of determining whether to apply the discovery rule, a distinction has historically been drawn between statutes based upon the accrual of a cause of action and those based upon the occurrence of a fixed objective event. In Evernham v. Selected Risks Ins. Co., 163 N.J.Super. 132, 136, 394 A.2d 373 (App.Div.1978) the court stated:

> The discovery principle developed in our tort law ... is peculiar to statutes of limitation based upon accrual of the cause of action, accrual being postponed if plaintiff neither knows nor has reason to know the facts equating with the likely accrual of a cause of action. [Citations omitted]. But a statute forbidding the institution of an action, otherwise maintainable, later than a period of years after a fixed objective event, generally precludes the operation of the discovery rule. [Citation omitted].

The court in Presslaff v. Robins, 168 N.J. Super. 543, 546, 403 A.2d 939, 940 (App. Div.1979) stated that "It is settled law in this State that the discovery principle is not applicable except in relation to an accrual period of limitations." The statute at issue here is of the "accrual" variety, and is similar in this regard to the statute to which the discovery rule was first applied in Fernandi.[7]

The most recent pronouncement by the Supreme Court of New Jersey concerning the applicability of the discovery rule came in O'Keefe v. Snyder, 83 N.J. 478, 416 A.2d 862 (1980). O'Keefe involved a replevin action by an artist whose paintings had been stolen from her thirty years before the action was instituted. In O'Keefe, the court applied the discovery rule to the precise statute at issue here and concluded that in an action for replevin of a painting, the cause of action accrued when the plaintiff "knew or reasonably should have known through the exercise of due diligence of the cause of action, including the identity of the possessor of the paintings." Id. at 493, 416 A.2d at 870. Thus in O'Keefe, as well as in other cases preceding it,[8] the New Jersey appellate courts have applied the discovery rule to the same statute of limitations that applies here.

█ One might attempt to distinguish this case from O'Keefe on the basis that O'Keefe involved a replevin action where the defendant remained in possession of the stolen property, whereas here we are dealing with alleged conversion of negotiable instruments under the Uniform Commercial Code where continuing wrongful possession is not at issue. However, it should be noted that the defendant in O'Keefe was not an accomplice to any wrongdoing, but innocently came into possession of the stolen paintings. Thus, the

---

5. N.J.Stat.Ann. § 2A:14–2 (West 1979) provides:
   Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this state shall be commenced within 2 years next after the cause of any such action shall have accrued.

6. See e.g. Diamond v. New Jersey Bell Telephone Co., 51 N.J. 594, 242 A.2d 622 (1968) (Discovery rule held applicable in suit for negligent installation of underground conduit.); New Market Poultry Farms, Inc. v. Fellows, 51 N.J. 419, 241 A.2d 633 (1968) (Discovery rule held applicable

to suit against professional engineer-land surveyor for negligent miscalculation of acreage); Federal Ins. Co. v. Hausler, 108 N.J.Super. 421, 261 A.2d 671 (App.Div.1970) (Discovery rule held applicable to action for wrongful detention of stock shares); Gibbins v. Kosuga, 121 N.J.Super. 252, 296 A.2d 557 (Law Div.1972) (Discovery rule held applicable to action for misrepresentation and breach of contract).

7. See supra n. 1

8. See supra n. 6.

mere fact of possession does not present a material distinction between *O'Keefe* and this case.[9] This court does not perceive any pragmatic or metaphysical distinction between this case and those where the discovery rule has been applied to N.J. Stat.Ann 2A:14–1 which would warrant a refusal to apply the rule in the context of transactions involving negotiable instruments under the Uniform Commercial Code. This court therefore holds that the discovery rule applies to an action against a bank for conversion of negotiable instruments under the Uniform Commercial Code. Plaintiff's cause of action did not accrue, and the statute of limitations did not begin to run until the trustee, or his predecessors in interest,[10] in the exercise of reasonable diligence knew or should have known of the facts giving rise to the cause of action.

Defendant urges the court to follow the decisions of other States' courts in refusing to apply the discovery rule in actions for conversion of negotiable instruments under the Uniform Commercial Code.

*Trust Company Bank v. Union Circulation Co.*, 241 Ga. 343, 245 S.E.2d 297 (1978), *Fuscellaro v. Industrial National Corp.*, 117 R.I. 558, 368 A.2d 1227 (1977), and *Continental Casualty Co. v. Huron Valley National Bank*, 85 Mich.App. 319, 271 N.W.2d 218 (1978), all dealt with the application of statutes of limitations for conversion of negotiable instruments under the Uniform Commercial Code. The courts held that the respective statutes began to run from the dates on which the instruments were converted. The interest in the finality of commercial transactions was considered to be of overriding importance. The *Fuscellaro* court stated that "The fi-

nality of transactions promoted by an ascertainable definite period of liability is essential to the free negotiability of instruments on which commercial welfare so heavily depends." 117 R.I. at 563, 368 A.2d at 1231. It pointed out that application of a discovery rule would "mitigate against finality and certainty of obligation ..." *Id.*

When *Fuscellaro* was decided in 1977, application of the discovery rule in Rhode Island was apparently narrowly limited. In discussing the adoption of the discovery rule by the Supreme Court of Rhode Island in *Wilkinson v. Harrington*, 104 R.I. 224, 243 A.2d 745 (1968), a medical malpractice case, the *Fuscellaro* court stated that "Such an evolution strongly suggests an almost generic difference, for purposes of the statute of limitations, between causes of action for medical malpractice and other causes of action for personal injury." 117 R.I. at 563, 368 A.2d at 1231. As already indicated, application of the discovery rule in New Jersey has progressed far past the medical malpractice context and this court is of the opinion that the present case represents another context where, in keeping with the direction of the Supreme Court of New Jersey, equity makes application of the rule desirable.

The plaintiff, of course, did not become the trustee until June 24, 1981 and therefore, as the trustee, could not have discovered the facts giving rise to the cause of action until his appointment. The inquiry does not end here, however, for it remains to be determined whether any predecessor in interest to the trustee knew or should have known of the cause of action at an earlier date.

9. The issue of possession in *O'Keefe* was not dispositive of the discovery rule question. Rather, the relationship between possession and the statute of limitations is that the expiration of the statute of limitations divests the original owner of title to personal or real property. 83 N.J. at 501, 416 A.2d 862.

10. In *Brown v. United States*, 496 F.Supp. 903, 906 (D.N.J.1980) the court stated that "The time runs from the date on which a plaintiff or his predecessors in interest 'knew or should have

known of the claim ...'" (Quoting 28 U.S.C.A. § 2409a(f) (West 1978)). In *Brown* the court was analyzing a different statute of limitations from the one at issue here. However, it is necessary to consider whether not only the plaintiff, but also any predecessor in interest to the plaintiff, knew or should have known of the cause of action. Were it otherwise, a party would be able to toll the running of the statute merely by substituting another in his stead.

An examination of the docket entries pertaining to the bankruptcy proceedings involving the debtor corporations [11] discloses the involvement in the proceedings, prior to June 24, 1981, of a receiver, attorneys for the debtors, and attorneys for creditors, as well as DeHart himself, albeit in a capacity other than trustee. However, the record before the court does not disclose whether any of these individuals could be considered predecessors in interest to the trustee, nor what duty or opportunity, if any, they had that would have enabled them to discover the facts which form the basis of plaintiff's cause of action.

■ In the context of a motion for summary judgment the movant always bears the initial responsibility of informing the court of the basis for its motion, and of identifying those portions of the documents of record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2549, 91 L.Ed.2d 265 (1986). In this regard the record is incomplete, for the court is unable to discern whether any person constitutes a predecessor in interest to the trustee, or whether any such person, in the exercise of reasonable diligence, knew or should have known of the facts giving rise to the cause of action against Midlantic. Any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party and all inferences must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Sunshine Books v. Temple University,* 697 F.2d 90 (3d Cir.1982). Applying these principles to this case, the court finds that there is a genuine issue of material fact as to whether any predecessor in interest to the trustee knew or should have known of the cause of action against Midlantic. The court is therefore unable to determine when in fact the statute of limitations began to run against plaintiff's claim. Ac-

cordingly, Midlantic's motion to dismiss will be denied.

---

**11.** The respective docket numbers in the U.S. Bankruptcy Court for the Middle District of Pennsylvania are BK–79–394 for Delta Metals, Inc. and BK–79–318 for Metropolitan Metals, Inc. See exhibit 2 to plaintiff's brief in opposition to defendant's motion to dismiss.