HADDAD'S OF ILLINOIS, INC., Plaintiff-Appellant, v. CREDIT UNION 1 CREDIT UNION, Defendant-Appellee.

Fourth District   No. 4—96—0211

Opinion filed March 14, 1997.

Richard B. Tomlinson and Edward S. Toth, both of Driggers, Schultz, Herbst & Paterson, of Troy, Michigan, for appellant.

Stephen R. Swofford and Daniel K. Ryan, both of Hinshaw & Culbertson, of Chicago, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff, Haddad's of Illinois, Inc., filed a conversion action against defendant, Credit Union 1 Credit Union, alleging Raja Raychouni, an employee of plaintiff, forged endorsements on checks payable to plaintiff and defendant deposited them into the account Raychouni opened with defendant. Defendant filed a motion for summary judgment, alleging plaintiff's cause of action was barred by the applicable statute of limitations and plaintiff did not have standing to sue defendant because it had no interest in the allegedly converted checks. The trial court granted defendant's motion, finding plaintiff's action barred by the statute of limitations. Plaintiff appeals. We affirm.

Plaintiff is a wholly owned subsidiary of the CATS Company (CATS), a Michigan corporation. CATS supplies computer equipment and supplies to its customers. In 1987, CATS contracted with the State of Illinois (State) to supply computer equipment and services to various state agencies. At that time CATS opened an office in Springfield in order to service the various state agencies.

Plaintiff incorporated in Illinois in 1989. On December 6, 1989, the board of directors of CATS executed a "Consent Resolution" making plaintiff a "joint owner" of any check payable to CATS regarding business operations in the State. Pursuant to the resolution, CATS gave plaintiff the right to "accept, endorse, deposit, and otherwise make use of" any check tendered for services performed by either plaintiff or CATS in connection with business in the State.

Under the terms of the State's contract with CATS, all payments were to be sent to CATS' office in Michigan. In addition, the invoices sent by CATS to the State gave the same instructions. Neither CATS nor plaintiff conducted any banking in Illinois and neither opened an account at any bank or credit union within the State.

On March 7, 1988, CATS hired Raychouni as branch manager of its Springfield office. Raychouni served in that capacity until July 2, 1990. Raychouni received purchase orders from the State and forwarded them to CATS in Michigan. CATS would then ship the products to its Springfield office for delivery.

During the period of time between March 1988 and May 1990, the State mailed checks in payment for its orders from CATS to its Springfield office *instead* of sending the payments to Michigan. Raychouni failed to forward the checks to CATS' home office and apparently forged the endorsement of CATS on the checks and deposited them into his personal account with defendant.

Jacques Haddad, president of CATS, was aware of every purchase made by the State. Albert Haddad, vice-president of CATS, was in charge of making sure CATS got paid for products it sold. He checked to make sure invoices were paid, and he knew if they were not paid. As early as October 1988, he knew there were invoices to the State for which CATS had not received payment.

Raychouni maintained banking accounts with defendant. Plaintiff contends on July 3, 1990, Raychouni admitted to Jacques he had deposited a $14,000 check issued by the State and payable to CATS into an account with defendant. Plaintiff's complaint alleges this happened a number of times during Raychouni's employment.

Plaintiff contends Raychouni continued to deposit checks into his account with defendant until May 1991, based upon the transaction stamp on the back of three of the checks. The checks were issued by the State in April and May 1990, but the stamp on the back of each is blurry and could read either 1990 or 1991. Albert stated in discovery, however, he believed Raychouni left the United States in 1990.

The three checks show they were deposited into account No. 425671. Defendant's records for that account show deposits in the same amounts as the subject checks were made in May 1990. Further, account No. 425671 was closed in August 1990 due to a negative balance and was cleared from defendant's books in December 1990, with no activity of any kind after that date.

On June 24, 1993, plaintiff sued defendant for conversion of the checks it paid over the endorsements allegedly forged by Raychouni. Defendant moved for summary judgment on alternative grounds. First, defendant argued plaintiff could not sue for conversion because it was not the payee on the checks and had no standing to sue for conversion. Second, defendant argued plaintiff's action was barred by the three-year statute of limitations for conversion actions set forth in section 3—118(g) of the Uniform Commercial Code—Negotiable Instruments (Code) (810 ILCS 5/3—118(g) (West 1994)). The trial court granted summary judgment on the basis the three-year statute of limitations was applicable and the discovery rule did not apply to toll the statute.

■ Plaintiff argues, first, the trial court applied the incorrect stat-

ute of limitations. Section 3—420(a) of the Code provides the law applicable to conversion of personal property applies to conversion of negotiable instruments. 810 ILCS 5/3—420(a) (West 1994). The law applicable to personal property provides causes of action for conversion shall be commenced within five years after the cause of action accrued. 735 ILCS 5/13—205 (West 1994). Therefore, plaintiff argues five years is the proper statute of limitations for actions for conversion of negotiable instruments.

However, the Code provides specifically in section 3—118(g) that three years is the statute of limitations for actions for conversion of a negotiable instrument. Where two statutes of limitation arguably apply to the same cause of action, the one which more specifically relates to the action must be applied. *Calumet Country Club v. Roberts Environmental Control Corp.*, 136 Ill. App. 3d 610, 612, 483 N.E.2d 613, 615 (1985). The proper statute of limitations for actions for conversion of negotiable instruments is three years as specifically set forth in the Code.

■ Plaintiff argues even if the three-year statute of limitations is correct, defendant's motion for summary judgment should not have been granted because a question of fact exists regarding whether its suit was filed in a timely manner. It contends either the cashing of the checks was part of an ongoing plan constituting a single transaction for purposes of the commencement of the statute of limitations or the discovery rule should be applied to its action for conversion of a negotiable instrument.

When a series of checks is cashed as part of an ongoing scheme or plan, the plan constitutes a single transaction for purposes of the commencement of the statute of limitations. See *Field v. First National Bank*, 249 Ill. App. 3d 822, 825-26, 619 N.E.2d 1296, 1298-99 (1993). Thus, if plaintiff alleged facts sufficient to show a plan for Raychouni's conversion of checks payable to CATS, the date on which the last check was deposited would govern as the date for all the checks for purposes of the statute of limitations.

However, in this case, contrary to plaintiff's assertions, there is no question of fact as to the date on which the last check was deposited with defendant by Raychouni. Plaintiff relies on the smudged stamp of the back of the last checks, which could be interpreted either as 1990 or 1991, and contends if they were deposited in 1991, its cause of action was timely filed even using the three-year statute of limitations, as the complaint was filed on June 24, 1993. The transaction stamp actually proves nothing, however, as "a fact cannot be inferred when a contrary fact could be inferred with equal certainty from the same evidence." *Leavitt v. Farwell*

*Tower Ltd. Partnership*, 252 Ill. App. 3d 260, 268, 625 N.E.2d 48, 54 (1993). Defendant's records indicate the account into which the checks were deposited was closed in December 1990, which would show the checks could not have been deposited in May 1991. Further, the checks were issued by the State in April and May 1990. These records are unrebutted by plaintiff and show the date on which the checks were deposited. The smudged transaction stamps are not sufficient to raise a question of fact for the trial court to determine.

■ Plaintiff argues, alternatively, the discovery rule should have been applied to postpone the accrual of its cause of action. Under common law, a cause of action for conversion accrued when a defendant exercised unauthorized control over the plaintiff's property. *O'Connell v. Chicago Park District*, 376 Ill. 550, 554, 34 N.E.2d 836, 839 (1941). "The discovery rule delays the commencement of the relevant statute of limitations until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused." *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 249, 633 N.E.2d 627, 630-31 (1994). The effect of the rule is to make the accrual of a plaintiff's cause of action the date on which he or she reasonably should know of his or her injury.

The discovery rule has been applied to a number of different tort causes of action in Illinois (see *Jackson Jordan*, 158 Ill. 2d 240, 633 N.E.2d 627 (legal malpractice); *Witherell v. Weimer*, 85 Ill. 2d 146, 421 N.E.2d 869 (1981) (negligence and product liability); *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 430 N.E.2d 976 (1981) (fraud and tortious misrepresentation); *Lipsey v. Michael Reese Hospital*, 46 Ill. 2d 32, 262 N.E.2d 450 (1970) (medical malpractice)), but there appears to be no authority on whether the discovery rule applies to a cause of action for conversion of a negotiable instrument. Consequently, we must look to the decisions of those jurisdictions that have addressed application of the discovery rule to actions for conversion of negotiable instruments.

A few courts in other jurisdictions have applied the discovery rule to actions for conversion of negotiable instruments. See *DeHart v. First Fidelity Bank, N.A./South Jersey*, 67 B.R. 740, 745 (D.N.J. 1986); *Stjernholm v. Life Insurance Co. of North America*, 782 P.2d 810, 811-12 (Colo. App. 1989); *Branford State Bank v. Hackney Tractor Co.*, 455 So. 2d 541, 542 (Fla. App. 1984) (*per curiam*). However, the vast majority of authority runs strongly against applying the discovery rule to an action for conversion of negotiable instruments in the absence of fraudulent concealment on the part of the defendant asserting the defense of the statute of limitations. See *Menichini v. Grant*, 995 F.2d 1224, 1231 (3d Cir. 1993); *Kuwait Airways Corp. v.*

*American Security Bank, N.A.*, 890 F.2d 456, 461 (D.C. Cir. 1989); *First Investors Corp. v. Citizens Bank, Inc.*, 757 F. Supp. 687, 690-92 (W.D.N.C. 1991); *Husker News Co. v. Mahaska State Bank*, 460 N.W.2d 476, 477-78 (Iowa 1990); *Wang v. Farmers State Bank*, 447 N.W.2d 516, 518-19 (S.D. 1989); *Fuscellaro v. Industrial National Corp.*, 117 R.I. 558, 562-64, 368 A.2d 1227, 1231 (1977); *Palmer Manufacturing & Supply, Inc. v. BancOhio National Bank*, 93 Ohio App. 3d 17, 22, 637 N.E.2d 386, 391 (1994); *Lyco Acquisition 1984 Ltd. Partnership v. First National Bank*, 860 S.W.2d 117, 119 (Tex. Ct. App. 1993); *Insurance Co. of North America v. Manufacturers Bank*, 127 Mich. App. 278, 283-84, 338 N.W.2d 214, 216 (1983); *Continental Casualty Co. v. Huron Valley National Bank*, 85 Mich. App. 319, 325, 271 N.W.2d 218, 221 (1978); *Southwest Bank & Trust Co. v. Bankers Commercial Life Ins. Co.*, 563 S.W.2d 329, 331-32 (Tex. Ct. App. 1978); *Gerber v. Manufacturers Hanover Trust Co.*, 64 Misc. 2d 687, 688-89, 315 N.Y.S.2d 601, 603 (1970); 4 W. Hawkland & L. Lawrence, Uniform Commercial Code Series § 3—419:10, at 983 (1994) (the cause of action should accrue when the act of conversion occurred).

Some of those courts which have applied the discovery rule have done so on the basis of their state's policy of consistently resolving conflicts between the rights of individuals to obtain redress and interests involving the flow of commercial transactions by favoring the rights of the individual. *Stjernholm*, 782 P.2d at 811. Other courts have noted the reason for the equitable discovery rule is to temper the harsh results that sometimes occur under the policy of requiring disputes be resolved within a reasonable time in order to allow a fair opportunity to defend. *DeHart*, 67 B.R. at 743.

Those courts declining to apply the discovery rule in actions for conversion of negotiable instruments have considered the rights of the individual, particularly the rights of unsuspecting victims of forgery, in comparison with the broader interests of the commercial world.

> "As tempting a choice as that may be in an individual case, however, we think the public would be poorly served by a rule that effectively shifts the responsibility for careful bookkeeping away from those in the best position to monitor accounts and employees. Strict application of the limitation period, while predictably harsh in some cases, best serves the twin goals of swift resolution of controversies and 'certainty of liability' advanced by the [Code]." *Husker News Co.*, 460 N.W.2d at 479.

Those courts declining to apply the discovery rule have done so based on two grounds. First, the commercial policies underlying the Code require liability on negotiable instruments not be open-ended.

"[T]he utility of negotiable instruments lies in their ability to be readily accepted by creditors as payment for indebtedness. Checks must be transferable. Consequently, 'in structuring the law of checks we ... seek to enhance the negotiability of commercial paper so that it may play its role as a money substitute.' Robert Hillman, *et al.*, *Common Law and Equity Under the Uniform Commercial Code*, [par.] 14.01[1] (1985). Negotiability requires predictable and rapid collection through payment channels.

Closely related to negotiability are commercial finality and certainty. 'The finality of transactions promoted by an ascertainable definite period of liability is essential to the free negotiability of instruments on which commercial welfare so heavily depends.' *Fuscellaro v. Industrial Nat'l Corp.*, 117 R.I. 558, 563, 368 A.2d 1227, 1231 (1977); [citation].
*\*\*\**

The Code drafters sought quick and inexpensive resolution of commercial disputes. This overarching goal is particularly important with negotiable instruments where the exigencies of commerce require inexpensive, quick, and reliable transfer of funds." *Menichini*, 995 F.2d at 1230-31.

Second, as noted by the court in *Husker News Co.*, the victim of the conversion is in the best position to easily and quickly detect the loss and take appropriate action. *Husker News Co.*, 460 N.W.2d at 479.

While not applying the discovery rule may be harsh in certain cases, we find the reasoning of the majority of other jurisdictions considering the issue to be most persuasive. The use of negotiable instruments was intended to facilitate the rapid flow of commerce. This policy is best served by finding the accrual of a cause of action for conversion of negotiable instruments occurs when the instrument is negotiated. The damage to the plaintiff occurs at that moment and the applicable statute of limitations then allows three years from that date to discover the conversion in the ordinary course of bookkeeping. Absent fraudulent concealment on the part of the defendant, this should allow ample time for a plaintiff to discover any injury. Therefore, we find the discovery rule does not apply to causes of action for conversion of negotiable instruments.

The judgment of the trial court is affirmed.

Affirmed.

McCULLOUGH and GARMAN, JJ., concur.