UNR–ROHN, INC., a DIVISION OF
UNR INDUSTRIES, INC.,
Appellant–Plaintiff,

v.

SUMMIT BANK OF CLINTON COUNTY
(now NBD Bank, N.A.), Appellee–Defendant (Third–Party Plaintiff),

Robert M. Pearson, Appellee (Third–Party Defendant).

No. 12A02–9512–CV–723.

Court of Appeals of Indiana.

Nov. 5, 1997.

Peter L. Obremskey, Anthony W. Patterson, Parr Richey Obremskey & Morton, Lebanon, for Appellant–Plaintiff.

Lester N. Bergum, Jr., Robison Robison Bergum & Johnson, Frankfort, for Appellee–Defendant.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

UNR–Rohn, Inc., a Division of UNR Industries, Inc., ("UNR–Rohn") filed a complaint against Summit Bank of Clinton County (now NBD Bank, N.A.) ("NBD") alleging that NBD breached its contractual and statutory duties by cashing and/or depositing third-party checks payable to UNR–Rohn into the personal account of third-party defendant Robert Pearson, a UNR–Rohn employee. UNR–Rohn appeals the trial court's order granting summary judgment in favor of NBD based on the Uniform Fiduciary Act. NBD cross-appeals the trial court's denial of its summary judgment motion on basis of the applicable statute of limitations.

We reverse in part and affirm in part.

### ISSUES

I. Whether a genuine issue of material fact exists precluding summary judgment.

II. Whether UNR–Rohn's claim is barred by the statute of limitations.

### FACTS

UNR–Rohn maintained a transfer account, a payroll account, and a special account at NBD Bank. Robert Pearson was employed by UNR–Rohn as an administrative manager at UNR–Rohn's plant and office in Frankfort, Indiana. Pearson's duties also included making certain banking transactions at NBD consisting of the following: (1) making deposits into UNR–Rohn's transfer account; (2) signing payroll checks; and (3) signing checks on a special (petty cash) account. In addition, Pearson was authorized by UNR–Rohn to endorse checks made payable to UNR–Rohn, and such authorization included access to and utilization of a rubber endorsement stamp containing an imprint which reads "FOR DEPOSIT ONLY." (S.R. 19, 32). The record is silent as to whether UNR–Rohn required Pearson to use this rubber endorsement stamp at all times for purposes of depositing its checks into the NBD transfer account.

In 1984, Pearson first began to embezzle UNR–Rohn funds by cashing third-party checks made payable to UNR–Rohn and appropriating the proceeds to his personal benefit. Pearson continued this practice of cashing checks until he resigned from UNR–Rohn in 1991 after his misappropriation of funds was discovered.

UNR–Rohn became suspicious of misappropriation on April 9, 1991, when a UNR–Rohn customer went to the company to pur-

chase accessories for a product purchased a week earlier and no record could be found of the sales transaction. Subsequently, after meeting with both NBD and Pearson, UNR–Rohn discovered that Pearson had misappropriated hundreds of checks. Only two embezzled checks were designated to the trial court. Pearson had endorsed one check by writing the name "UNR–Rohn" on the back side of the check. (R. 135). Pearson had endorsed the other check by using a rubber stamp simply bearing the name "UNR–ROHN, INC." (R. 136).

On September 5, 1991, the State filed an information against Pearson alleging that Pearson knowingly exerted unauthorized control over the property of UNR–Rohn from October 9, 1984, to April 9, 1991. Pearson pleaded guilty to the charges as filed. The criminal court sentenced Pearson and ordered him to make restitution to UNR–Rohn in the amount of $182,261.57.

On February 11, 1993, UNR–Rohn filed a complaint against NBD, generally alleging that

> [NBD] owed contractual and statutory duties to UNR–Rohn to deposit the checks to UNR's account rather than to cash them, as requested by Mr. Pearson. As a result of [NBD]'s breach of its duties, UNR has suffered monetary damages.

(R. 12). NBD moved for a more definite statement, seeking, in part, a description of any oral or written contracts and statutes referred to in UNR–Rohn's complaint. The trial court denied NBD's motion. In its answers to interrogatories, UNR–Rohn stated that it was relying on a contract that "is oral and in writing and is represented by a banking agreement signed between Plaintiff and [NBD]." (S.R. 18). Also, UNR–Rohn stated that it was relying on Ind.Code § 26–1–3–

419 [1] for its claim of breach of statutory duties. On August 12, 1994, NBD moved for summary judgment based upon the Uniform Fiduciary Act and the applicable statute of limitations. After conducting a hearing, the trial court granted NBD's summary judgment motion, finding that the Uniform Fiduciary Act insulated NBD from liability but rejecting NBD's statute of limitations defense.

## DECISION

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). The burden is on the moving party to prove there are no genuine issues of material fact and he is entitled to judgment as a matter of law. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter,* 596 N.E.2d 1369, 1371 (Ind.1992). In ruling on a summary judgment motion, all evidence must be construed in favor of the non-moving party, and all doubts as to the existence of a material issue must be resolved against the moving party. *Bailey v. Manors Group,* 642 N.E.2d 249, 252 (Ind.Ct.App.1994), *reh'g denied, trans. denied.*

When reviewing an entry of summary judgment, we are bound by the same standard as the trial court. *Webb v. Jarvis,* 575 N.E.2d 992, 994 (Ind.1991), *reh'g denied.* We do not weigh the evidence but will consider the facts in a light most favorable to the nonmoving party. *Reed v. Luzny,* 627 N.E.2d 1362, 1363 (Ind.Ct.App.1994), *reh'g denied, trans. denied.* Finally, we may sustain a summary judgment upon any theory

---

1. I.C. § 26–1–3–419 (now repealed) provides:
   (1) An instrument is converted when:
      (a) A drawee to whom it is delivered for acceptance refuses to return it on demand; or
      (b) any person to whom it is delivered for payment refused on demand either to pay or to return it; or
      (c) It is paid on a forged indorsement.
        \*   \*   \*   \*   \*   \*
   (3) Subject to provisions of IC 26–1 concerning restrictive indorsements, a representative, in-

cluding a depository or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands.

supported by the designated materials. T.R. 56(C).

*Background of the Uniform Fiduciary Act*

■ In this case, we are faced with an issue of first impression which requires us to construe the Uniform Fiduciary Act (UFA), as enacted in Indiana. The UFA, approved by the National Conference of Commissioners on Uniform State Laws and the American Bar Association in 1922, was enacted in Indiana in 1927 and is codified at Ind.Code 30-2-4, *et al.* Courts in jurisdictions adopting similar versions of the UFA have stated that " '[t]he purpose of the Act is to facilitate the fiduciary's performance of his responsibilities by limiting the liability of those who deal with him,' and 'to cover situations which arise when one person honestly deals with another knowing him to be a fiduciary.' " *Appley v. West*, 832 F.2d 1021, 1031 (7th Cir.1987) (citations omitted). The UFA relieves a depository bank of the duty of seeing that funds are properly applied and places the burden upon the principal to employ honest fiduciaries. *Hosselton v. First American Bank N.A.*, 240 Ill.App.3d 903, 181 Ill. Dec. 557, 561, 608 N.E.2d 630, 634 (1993), *appeal denied* 151 Ill.2d 564, 186 Ill.Dec. 381, 616 N.E.2d 334. By relaxing some of the harsher rules which require banks and individuals to exercise the highest degree of vigilance in the detection of a fiduciary's wrongdoing, the UFA provides protection for banks who deal with authorized fiduciaries except where they know the fiduciary is breaching his or her duty to the principal involved, or where they have knowledge of such facts that their action in dealing with the fiduciary amounts to bad faith. *Zions First National Bank v. Clark Clinic Corp.*, 762 P.2d 1090, 1100 (Utah 1988).

I. *Bad Faith or Good Faith*

■ UNR–Rohn contends that the trial court erred in granting summary judgment because there remains an issue of material fact regarding whether the bank acted in bad faith, thereby precluding summary judgment. We agree.

Both parties agree that the UFA contains two pertinent sections, Ind.Code §§ 30-2-4-4

and 9, which are controlling in the present case. I.C. § 30-2-4-4 provides, in part, as follows:

Transfer of negotiable instrument by fiduciary. If any negotiable instrument payable or indorsed ... to his principal is indorsed by a fiduciary empowered to indorse such instrument on behalf of his principal, *the indorsee is not bound to inquire whether the fiduciary is committing a breach of his obligation as fiduciary in indorsing or delivering the instrument, and is not chargeable with notice that the fiduciary is committing a breach of his obligation as fiduciary unless he takes the instrument with actual knowledge of such breach or with knowledge of such facts that his action in taking the instrument amounts to bad faith.* If, however, such instrument ... is transferred in any transaction known by the transferee to be for the personal benefit of the fiduciary, the creditor or other transferee is liable to the principal if the fiduciary, in fact commits a breach of his obligation as fiduciary in transferring the instrument. (Emphasis added.).

I.C. § 30-2-4-9 provides, in part, as follows:

If a fiduciary makes a deposit in a bank to his personal credit ... of checks payable to his principal and indorsed by him, if he is empowered to indorse such checks, ... the bank receiving such deposit is not bound to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary; and the bank is authorized to pay the amount of the deposit or any part thereof upon the personal check of the fiduciary without being liable to the principal, *unless the bank receives the deposit or pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit or in drawing such check, or with knowledge of such facts that its action in receiving the deposit or paying the check amounts to bad faith.* (Emphasis added.).

If a fiduciary is empowered to endorse under Sections 4 and 9, the UFA provides endorsees and banks protection from liability except where they have (1) actual knowledge

the fiduciary is breaching his or her duty to the principal, or (2) knowledge of sufficient facts that their action in dealing with the fiduciary amounts to bad faith. I.C. § 30–2–4–4; I.C. § 30–2–4–9.

■ The UFA does not define the term "bad faith" and we have been unable to find any Indiana cases defining the term as it is used in the UFA. However, the UFA does define something as being done "in good faith" when "it is in fact done honestly, whether it be done negligently or not." I.C. § 30–2–4–1(4). "Bad faith" is the antithesis of good faith and is not simply bad judgment or negligence; rather, "it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity" and "contemplates a state of mind affirmatively operating with furtive design or ill will." Black's Law Dictionary (6th ed.1990) at 139 (citing *Stath v. Williams*, 174 Ind.App. 369, 367 N.E.2d 1120, 1124 (1977)).

■ In *Edwards v. Northwestern Bank*, 39 N.C.App. 261, 250 S.E.2d 651, 657 (1979), the North Carolina Court stated that the term "bad faith" requires a showing of some indicia of dishonest conduct or a showing of facts and circumstances so cogent and obvious that to remain passive would amount to a deliberate desire to evade knowledge because of a belief or fear that inquiry would disclose a defect in the transaction. 250 S.E.2d at 656–57. In determining whether a bank has acted with bad faith under the UFA, courts have asked "whether it was 'commercially' unjustifiable for the payee to disregard and refuse to learn facts readily available." *Appley*, 832 F.2d at 1031 ("At some point, obvious circumstances become so cogent that it is 'bad faith' to remain passive.") (citations omitted); *see also General Ins. Co. of America v. Commerce Bank of St. Charles*, 505 S.W.2d 454, 457–58 (Mo.App.1974) ("Evil motive is not the gauge; it is whether it is 'commercially unjustifiable for the [bank] to disregard or refuse to learn facts readily available' ").

Here, NBD, as the moving party, had the initial burden to establish that there was no genuine issue of material fact by the evidence it produced in support of its motion for summary judgment. It is on this initial burden borne by NBD that we focus our analysis. UNR–Rohn's complaint alleges that from 1984 through 1991 NBD breached its contractual and statutory duties to UNR–Rohn by permitting Pearson to embezzle proceeds from cashed checks made payable to UNR–Rohn. The designated materials reveal that UNR–Rohn had a banking relationship with NBD, maintaining three corporate accounts at the bank. NBD permitted Pearson to cash or to deposit several hundred corporate checks into his personal accounts at NBD totaling approximately $182,000. In support of its motion for summary judgment, NBD merely relied upon general assertions in its pleadings that it acted in good faith and that it lacked knowledge of any breach of Pearson's fiduciary duty. There was no designated material indicating that NBD employees investigated Pearson's fiduciary capacity or determined the scope of Pearson's authority to negotiate third-party checks payable to UNR–Rohn. We believe NBD's mere assertion of good faith, particularly in a case in which state of mind is an element to be proven, fails to meet its initial burden of establishing the lack of a genuine issue of material fact. In light of our standard of review, and the foregoing circumstances, we find that a trier of fact could conclude that it was commercially unjustifiable for NBD to disregard and refuse to learn facts readily available under the circumstances of this case.[2]

## II.  *Statute of Limitations*

On cross-appeal, NBD contends that UNR–Rohn's claim for conversion of negotiable instruments based on all checks allegedly cashed or negotiated by NBD before February 11, 1991, is barred by the two-year statute of limitations for personal property. We disagree.

---

**2.** We note the limited designated facts before the trial court. The parties failed to designate the banking agreement between the parties, the signature card(s) or any material regarding commercial standards.

UNR–Rohn and NBD both agree that the two-year statute of limitations for injury to personal property under Ind.Code § 34–1–2–2(1) applies to UNR–Rohn's conversion claim under I.C. 26–1–3–419.[3] NBD contends that UNR–Rohn's cause of action accrued "from the time that each check was cashed or otherwise negotiated at NBD Bank." NBD's Brief at 34. UNR–Rohn responds that the discovery rule applies and that its cause of action did not accrue until it knew, or in the exercise of ordinary diligence, should have discovered that Pearson was embezzling funds. Thus, the central issue on cross-appeal is when UNR–Rohn's cause of action accrued.

I.C. § 34–1–2–2(1) provides that an action shall be commenced within two years "after the cause of action has accrued" for injuries to person or character, for injuries to personal property, and for a forfeiture of penalty given by statute. "Courts determine when a cause of action 'accrues.'" *Malachowski v. Bank One, Indianapolis,* 590 N.E.2d 559, 564 (Ind.1992) (citing *Barnes v. A.H. Robins Co., Inc.,* 476 N.E.2d 84, 85 (Ind.1985)).

In determining when different causes of action accrue under I.C. § 34–1–2–2, our courts since 1992 have consistently applied the discovery rule, which provides that a cause of action accrues when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the act of another. *Madlem v. Arko,* 592 N.E.2d 686, 687 (Ind.1992) (negligent notarization); *Malachowski, supra* (Ind.1992) (injury to personal property); *Wehling v. Citizens Nat. Bank,* 586 N.E.2d 840 (Ind.1992) (tort claim alleging bank negligently recorded deed to property); *City of Hobart Sewage Works v. McCullough,* 656 N.E.2d 1185 (Ind.Ct.App. 1995), *trans. denied* (negligence); *Page v. Hines,* 594 N.E.2d 485 (Ind.Ct.App.1992) (negligent failure to procure insurance coverage); *Groen v. Elkins,* 551 N.E.2d 876 (Ind. Ct.App.1990), *trans. denied* (abuse of process

claim).[4] This standard "is based on the reasoning that it is inconsistent with our system of jurisprudence to require a claimant to bring his cause of action in a limited period in which, even with due diligence, he could not be aware a cause of action exists." *Barnes,* 476 N.E.2d at 86.

In *Wehling,* our supreme court expanded its application of the discovery rule to all tort actions. 586 N.E.2d at 843. *Wehling* involved, in part, a suit by property owners against a bank for negligently recording a deed to the owners' real estate and failing to escrow and pay real estate taxes thereon. In reversing the grant of summary judgment in favor of the bank, the supreme court observed the Indiana rule to be that "a cause of action accrues, and thus the statute of limitations beings to run, when the resultant damage of a negligent act is 'susceptible of ascertainment.'" *Id.* at 842. The supreme court found no significant difference between the discovery rule followed in some jurisdictions and the "ascertainment rule" followed in Indiana, and concluded as follows:

> We now complete the merging of the 'discovery' and 'ascertainment' rules. We hold that the cause of action of a tort claim accrues and the statute of limitations begins to run when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another.

*Id.* at 843. In other words, under Indiana law, "a tort action accrues and applicable statutes of limitations begin to run when the injured party knows or, in the exercise of ordinary diligence, could have known, that he or she had sustained an injury." *Habig v. Bruning,* 613 N.E.2d 61, 64 (Ind.Ct.App. 1993), *trans. denied.*

Notwithstanding the aforementioned Indiana law, NBD repeatedly claims that no Indiana case has applied the discovery rule to conversion of negotiable instruments and cites numerous cases in other jurisdictions

---

**3.** During the period in question, Indiana's version of the U.C.C. did not specify a statute of limitations for conversion of negotiable instruments.

**4.** We have also applied the discovery rule to I.C. § 34–1–2–1. *See Habig v. Bruning,* 613 N.E.2d 61 (Ind.Ct.App.1993), *trans. denied* (breach of contract and warranty actions).

which have refused to apply the discovery rule to I.C. 26–1–3–419. Although it is true that none of the Indiana cases cited above involved the accrual date of a claim of conversion, the holding of *Wehling* and the reasoning inherent in it logically applies to all tort actions. To carve out an exception to the discovery rule in injuries to personal property involving conversion of negotiable instruments would be wholly incongruous and inconsistent with Indiana's system of jurisprudence.[5]

■ Therefore, the question to be resolved is when UNR–Rohn discovered, or reasonably should have discovered, NBD's alleged conversion of its checks. Here, the designated material reveals that between 1984 and April of 1991, Pearson embezzled hundreds of third-party checks made payable to UNR–Rohn. On April 9, 1991, UNR–Rohn first became suspicious of Pearson's scheme of misappropriating checks when a UNR–Rohn customer went to the company to purchase accessories for a product purchased a week earlier and no record could be found of the sales transaction. After meeting with NBD and Pearson, UNR–Rohn discovered the misappropriation of numerous UNR–Rohn checks. These facts are sufficient to raise a factual dispute regarding when UNR–Rohn could have, in the exercise of ordinary diligence, discovered the conversion of the checks. Therefore, the trial court correctly denied summary judgment against UNR–Rohn on the grounds that their claim was barred by the statute of limitations.

Reversed and remanded in part and affirmed in part.

RILEY and KIRSCH, JJ., concur.

---

5. We recognize that the vast majority of authority from other jurisdictions runs against applying the discovery rule to an action for conversion of negotiable instruments under U.C.C. 3–419 in the absence of fraudulent concealment on the part of the defendant asserting the defense of the statute of limitations. Courts in those jurisdictions have refused to apply the discovery rule, finding it inimical to U.C.C. policies of finality, negotiability and uniformity. *See Menichini v. Grant,* 995 F.2d 1224, 1229 (3d Cir.1993); *Haddad's of Ill., Inc. v. Credit Union 1 Credit Union,* 286 Ill. App.3d 1069, 222 Ill.Dec. 710, 713, 678 N.E.2d 322, 325 (1997).