IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 9, 2001 Session

## PERO'S STEAK AND SPAGHETTI HOUSE and LOUIS INN v. ELIZABETH JEAN HINKLE LEE and FIRST AMERICAN NATIONAL BANK and FIRST TENNESSEE BANK NATIONAL ASSOCIATION

**Direct Appeal from the Circuit Court for Knox County**
**Nos. 3-541-96 and 3-544-96     Hon. Dale C. Workman, Circuit Judge**

**FILED OCTOBER 8, 2001**

**No. E2001-00254-COA-R3-CV**

Plaintiffs' action against defendant Bank was dismissed by the Trial Court on the ground the statute of limitation, Tenn. Code Ann. §47-3-118(g) had run.  On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., joined, and CHARLES D. SUSANO, JR., J., dissented and filed an opinion. .

James S. Tipton, Jr., and W. Morris Kizer, Knoxville, Tennessee, for Plaintiffs-Appellants, Pero's Steak and Spaghetti House and Louis Inn.

Stephen G. Anderson, Knoxville, Tennessee, for Defendant-Appellee, First Tennessee Bank National Association.

### OPINION

Plaintiffs action against First Tennessee Bank National Association ("Bank") was held to be time-barred by the Trial Judge pursuant to Tenn. Code Ann. §47-3-118.  Plaintiffs have appealed to this Court.

Pero's Steak and Spaghetti House and Louis Inn are businesses located in Knoxville,

Tennessee, operated as general partnerships. The partners of the two businesses engaged Elmer Hinkle, as their general bookkeeper to handle Louis Inn and Pero's general bookkeeping, accounting and tax preparation. Hinkle did business under the name of Hinkle & Hinkle, a family business including his wife and daughter, Elizabeth Hinkle Lee ("Lee"). Beginning in 1985, Lee handled all of the work for Pero's and Louis Inn.

Between 1988 and 1995, Pero's Steak and Spaghetti House wrote 54 checks for the payment of taxes and Louis Inn wrote 86 checks for the payment of taxes. Pero's checks were drawn on First American Bank, where Pero's did its banking. The Louis Inn checks were drawn on First Tennessee Bank. All 140 checks were made payable to First Tennessee. All checks were given to Defendant Lee by Pero's or Louis Inn in order for her to present them to the Bank.

Some of the 140 checks were presented for payment to the IRS accompanied by an IRS payment coupon. These checks and coupons were set aside by the Bank with similar deposits from other employers and would be deposited in the Bank's Treasury, Tax and Liability account. The Bank would then transmit monies to the IRS with a tape identifying the portion to be credited to each employer's identification number.

Not all of the checks were handled in the stated manner. Sometimes, Lee cashed the checks and used some or all of the proceeds to buy cashier's checks payable to the state or the IRS. Sometimes she deposited the checks in an account called the Hinkle & Hinkle Tax Account. Lee would then draw checks on the Hinkle Account to pay taxes owed by Pero's and Louis Inn.

In 1991, Pero's was audited by the IRS. As a result of that audit, Pero's was required to pay approximately $39,000.00 in back taxes, interest and penalties. On or about February 3, 1992, Pero's received another notice from the IRS stating that no tax deposits were received during the fourth quarter of 1990, but four checks had been written by Pero's in the fourth quarter of 1990 each for the amount of $9,500.00, or a total of $38,000.00.

The Complaint against First Tennessee Bank alleged that the Bank had engaged in a joint conversion with Lee, allowing her to cash or deposit a number of checks for her own credit.

Eventually, a trial ensued over this dispute before a jury, and jury verdicts were returned for the plaintiff which were ultimately set aside by the Trial Judge and a new trial granted before another Judge. On August 18, 2000, the Bank filed a Motion for Partial Summary Judgment based upon its affirmative defense, i.e., the statute of limitations. The plaintiffs also filed a joint Motion for Partial Summary Judgment. Acting on the Motions, the Trial Court granted the Bank's Motion for Partial Summary Judgment, but denied plaintiffs' Motion. In light of this decision, there remained no dispute regarding the claims of plaintiffs not time-barred by the Court's holding, and the stipulation of the amount of those claims, together with the grant of partial summary judgment, were reflected in the Court's Order and Final Judgment of October 5, 2000.

Our review of summary judgments involves purely a question of law, with no

presumption of correctness of the lower court's judgment, and we are required to review the record to determine if the requirements of Tenn. Code Civ. P. 56 have been met. *Staples v. C.B.L. & Associates, Inc.,* 15 S.W.2d 83 (Tenn. 2000).

Prior to 1996, the statute of limitations on actions for conversion of negotiable instruments was not a separate statute, but rather was governed by the statute of limitations for property tort actions.

> The following actions shall be commenced within three (3) years from the accruing of the cause of action: . . . (2) Actions for the detention or conversion of personal property.

Tenn. Code Ann. § 28-3-105. *See McConnico v. Third Nat'l Bank*, 499 S.W.2d 874, 891 (Tenn. 1973) (applying general limitation period for conversion of personal property "absent an appropriate limitation in the Uniform Commercial Code"). In applying this general limitation provision to causes of action for the conversion of negotiable instruments, this Court employed the discovery rule and held that the statute of limitations runs from "the time when the plaintiff knew or reasonably should have known that a cause of action existed." *Pacific Properties v. Home Federal Bank*, 1995 WL 59112, *4 (Tenn. Ct. App. 1995) (citing *Stone v. Hinds*, 541 S.W.2d 598, 599 (Tenn. Ct. App. 1976).

After the *Pacific Properties* decision, the legislature adopted § 47-3-118(g) in June of 1995, establishing a specific statute of limitations for conversion of negotiable instruments and placing that statute within the Uniform Commercial Code section of the Tennessee Code. The statute became effective on June 1, 1996 and provides:

> (g) Unless governed by other law regarding claims for indemnity or contribution, an action (i) for the conversion or an instrument, for money had and received, or like action based on conversion, (ii) for breach of warranty, or (iii) to enforce an obligation, duty, or right arising under this chapter and not governed by this section must be commenced within three (3) years after the [cause of action] accrues.

Tenn. Code Ann. § 47-3-118.

Plaintiffs argue that § 118(g) does not apply because it became effective after their cause of action accrued. They argue that their action accrued in March of 1996, after they pursued an investigation of an IRS levy on their bank account, which had required First Tennessee Bank to remit to the IRS $24,386.48 from the accounts of Louis Inn at the Bank, for an alleged underpayment of federal payroll taxes.

The Trial Court found that even if the discovery rule was applicable (which the Court found did not apply), the plaintiffs' action would still be time-barred because they knew or had reason to know of the conversion of the checks by February of 1992, and the action was not brought

until August of 1996.

Plaintiffs argue that upon receiving the notice from the IRS on February 3, 1992, that they believed Lee, to whom they gave their checks, when she told them that a mistake had been made and that no additional taxes were actually owed, and contend that they did not discover the conversion of the checks then, because of their reliance upon their long-standing professional relationship with Lee. They claim that they only became aware of the conversion after the IRS placed a levy on their bank account with the Bank in 1995.

Where the discovery rule is applicable, the statute of limitations begins to run when plaintiff knows or in exercise of reasonable care and diligence should know, that an injury has been sustained as a result of wrongful or tortious conduct by the defendant. *See Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1998). The plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct. *See Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn. 1994).

Against the backdrop of an IRS audit in 1991 where plaintiffs were required to pay back taxes, interest and penalties, the February 3, 1992 notice to plaintiffs stating that no deposits were made for the fourth quarter of 1990 would put a reasonable person on notice that either the Bank had not made payment to the IRS or Lee had not made the deposits.

The Trial Judge held the discovery rule does not apply, but plaintiffs argue that §118(g) does not apply because it became effective after their cause of action accrued. However, the statute of limitations codified at §47-3-118 does not shorten any applicable statute of limitations. At all relevant times actions for conversion of negotiable instruments must have been brought within three years of the accrual of the cause of action.

The discovery rule is an equitable exception to the general rule that the statute of limitations begins to run as soon as the underlying cause of action accrues. *See Menichini v. Grant*, 995 F.2d 1224, 1229 (3d Cir. 1993); *Palmer Mfg. and Supply, Inc. v. BancOhio Nat'l Bank*, 637 N.E.2d 386, 389-91 (Ohio Ct. App. 1994). *Also see Teeters v. Currey*, 518 S.W.2d 512, 517 (Tenn. 1974) (referring to the discovery rule as an "equitable doctrine". The overwhelming weight of authority is to the effect that the discovery rule does not apply to negotiable instrument theft. *See, e.g., Menichini*; *Kuwait Airways Corp. v. American Security Bank*, 890 F.2d 456, 461-63 (D.C. Cir. 1989); *Stefano v. First Union Nat'l Bank of Virginia*, 981 F.Supp. 417, 421 (E.D. Va. 1997); *Haddad's of Illinois, Inc. v. Credit Union 1 Credit Union*, 678 N.E.2d 322-325-26 (Ill. App. Ct. 1997); *Husker News Co. v. Mahaska State Bank*, 460 N.W.2d 476, 477-78 (Iowa 1990); *Insurance Co. of North America v. Manufacturers Bank of Southfield*, 338 N.W.2d 214, 216 (Mich Ct. App. 1983); *Smith v. Franklin Custodian Funds, Inc.*, 726 So.2d 144, 148 (Miss. 1998); *Gerber v. Manufacturers Hanover Trust Co.*, 315 N.Y.S.2d 601, 603 (N.Y. Civ. Ct. 1970); *Palmer Mfg. and Supply, Inc. v. BancOhio Nat'l Bank*, 637 N.E.2d 386, 389-91 (Ohio Ct. App. 1994); *Fuscellaro v. Industrial Nat'l Corp.*, 368 A.2d 1227, 1231 (R.I. 1977); *Wang v. Farmers State Bank of Winner*, 447 N.W.2d 516, 518 (S.D. 1989); *Lyco v. Acquisition 1984, L.P. v. The First Nat'l Bank of*

*Amarillo*, 860 S.W.2d 117, 119 (Tex. Ct. App. 1993).

Where a party not engaging in fraudulent concealment asserts the statute of limitations defense, most courts have refused to apply the discovery rule to negotiable instruments, finding it contrary to UCC policies of finality and negotiability. See e.g. *Palmer Mfg. and Supply, Inc. v. BancOhio Nat'l Bank*, 637 N.E.2d 386, 389-91 (Ohio Ct. App. 1994).

In adopting the UCC in this State, the Legislature codified the purposes and policy of the Code:

    (a)     to simplify, clarify and modernize the law governing commercial transactions;

    (b)     to permit the continued expansion of commercial practice through custom, usage and agreement of the parties; and

    (c)     to make uniform the law among the various jurisdictions.

Tenn. Code Ann. § 47-1-102(2).

Statutory uniformity is a principle to be applied in construing the UCC in Tennessee. *Wakefield v. Crawley*, 6 S.W.3d 442, 450 (Tenn. 1999).

To be in conformity with other jurisdictions, Tennessee should likewise abandon the use of the discovery rule in actions for conversion of negotiable instruments absent fraudulent concealment on the part of the defendant asserting the statute of limitations defense. However, plaintiffs argue that they should not be prevented from relying upon the discovery rule that was applied in *Pacific Properties* prior to the codification of the statute of limitations in the U.C.C. While the statute of limitations itself remained at three years, the effect of the new statute is to eliminate the discovery rule from cases of conversions of negotiable instruments. This, in turn, effectively limits the time in which a person has to bring a claim for conversion. However, it is well established that a newly effective statute of limitations cannot extinguish a cause of action that has already accrued, without giving the plaintiff a reasonable opportunity to bring suit after the changes. *See Pacific Eastern Corp. v. Gulf Life Co.*, 902 S.W.2d 946, 956 (Tenn. Ct. App. 1995).

The Legislature adopted the statute of limitations provision for conversion of negotiable instruments in June of 1995, but delayed its effective date until June 1, 1996. Tenn. Code Ann. §47-3-118. Assuming without deciding that plaintiffs had a constitutionally vested right to the benefit of the discovery rule, plaintiffs concede they learned of the injurious transactions after the IRS levied on their bank account in 1995 and before the statute became effective. Yet they did not bring an action against the Bank during the year in which the Legislature delayed the effective date of the statute and give no valid reason why they waited until August 29, 1996 to bring this action, after the statute had become effective. As we said in *Pacific Eastern Corp. v. Gulf Life Co.,* 902

S.W.2d 946 (Tenn. App. 1995):

> [a]n amendment that shortens an existing statute of limitations cannot extinguish a cause of action that has already accrued without giving the plaintiff a reasonable opportunity to bring suit after the effective date of the amendment. (Citations omitted).

*Id.* 956.

The Legislature gave such parties a reasonable time to bring their action, i.e., one year from the passage of the statute before it became effective. Accordingly, indulging the plaintiffs' right to apply the discovery rule, they had a reasonable time to bring their action, which they failed to do before the statute became effective.

Finally, plaintiffs argue that the fraudulent concealment doctrine tolled the statute of limitations regardless of whether they should have discovered their cause of action, or not.

In *Shadrick v. Coker,* 963 S.W.2d 726 (Tenn. 1998), the Supreme Court addressed the issue of fraudulent concealment:

> To establish fraudulent concealment, a plaintiff must prove (1) that the defendant took affirmative action to conceal the cause of action or remained silent and failed to disclose material facts despite a duty to do so and, (2) the plaintiff could not have discovered the cause of action despite exercising reasonable care and diligence.
>
> . . .
>
> The third essential element of fraudulent concealment is knowledge on the part of the defendant of the facts giving rise to the cause of action. In other words, the defendant must be aware of the wrong.
>
> . . .
>
> The fourth and final essential element of fraudulent concealment is a concealment of material information from the plaintiff. Concealment "may consist of withholding information or making use of some device to mislead" the plaintiff in order to exclude suspicion or prevent inquiry.

We hold that the plaintiffs have neither pled nor offered evidence to establish a prima facie case of fraudulent concealment.

We affirm the judgment of the Trial Court, and remand with the cost of the appeal assessed to plaintiffs Pero's Steak and Spaghetti House and Louis Inn.

-6-

_____

HERSCHEL PICKENS FRANKS, J.