AUTO–OWNERS INSURANCE COMPANY, Appellant–Plaintiff,

v.

BANK ONE; Bank One Indiana, Corp.; Bank One, N.A., Bank One, Indiana, N.A.; Bank One, Inc., Appellees–Defendants.

No. 49A04–0511–CV–647.

Court of Appeals of Indiana.

Aug. 15, 2006.

events prior to the filing of the Development Plan.

Bruce N. Elliott, Conlin, McKenney & Philbrick, P.C., Ann Arbor, MI, Thomas R. Haley, III, Jennings Taylor Wheeler & Haley, P.C., Carmel, IN, for Appellant.

Jeffrey C. McDermott, Marc T. Quigley, Krieg DeVault, LLP, Indianapolis, IN, for Appellees.

## OPINION

ROBB, Judge.

*Case Summary and Issue*[1]

Auto–Owners Insurance Company ("Auto–Owners") appeals the trial court's order granting Bank One's motion for summary judgment and denying Auto–Owners' motion for partial summary judgment. Auto–Owners raises four issues for our review, which we consolidate and re-state as whether the trial court properly granted Bank One's motion for summary judgment and denied Auto–Owners' motion for partial summary judgment. Because the discovery rule does not apply to claims for conversion of a negotiable in-strument, Auto–Owners' claims for negligence and conversion based on any checks negotiated before October 30, 1995, are barred by the statute of limitations. Bank One is entitled to summary judgment on Auto–Owners' claims based on checks negotiated after October 30, 1995, because it proved the defense available to it under Indiana Code section 26–1–3.1–405(b), and because Auto–Owners did not show the existence of a genuine issue of material fact regarding whether Bank One failed to exercise ordinary care in taking the checks for deposit. The trial court's order grant-ing Bank One's motion for summary judg-ment and denying Auto–Owners' motion for partial summary judgment is therefore affirmed.

*Facts and Procedural History*

Between 1988 and 1998, Kenneth Wulf was employed by Auto–Owners as a field claims representative and resident adjust-er. Wulf resided in Bloomington, Indiana, but spent a good deal of his time working out of Auto–Owners' Indianapolis branch office. As a claims representative, Wulf was responsible for determining whether Auto–Owners should pursue a subrogation or a salvage claim. Salvage involves an insurance company taking control of cer-tain property, usually a wrecked car, after payment of a claim for loss, and then selling that property. With subrogation, an insurance company steps into the shoes of its insured following the payment of a claim, and then pursues the claim of its insured. If a salvage or a subrogation claim was warranted, the claims represen-tative was responsible for every aspect of the claim process. The claims representa-tive was supposed to place a notation in the file indicating that subrogation or sal-vage was being pursued. If the claim involved subrogation, the claims represen-tative was responsible for hiring an attor-ney to pursue the claim, and would be the subrogation attorney's sole contact. The claims representative had the authority to settle a subrogation or a salvage claim up to a certain dollar amount.

When Auto–Owners received a check for subrogation or salvage, the clerical staff initially handled the check. The clerical staff would open the daily mail, remove any subrogation or salvage checks, attach the check to the appropriate file, and give the file to the claims representative. The clerical staff did not keep a record of the subrogation and salvage checks that were received. Furthermore, Auto–Owners did not maintain a list of all pending subroga-tion or salvage claims. The only way a branch manager could determine whether a salvage or subrogation claim was pend-ing was to look at the file. When the claims representative received a file with a subrogation or salvage check, he or she was responsible for processing the check by making a notation in the file indicating that the check was received. The claims representative was then supposed to com-plete a transmittal form for the check, and return the check to the clerical staff who

1. Oral argument was heard in this case on July 19, 2006, in our courtroom in Indianapo-lis. We thank the attorneys for their insight-ful arguments.

would mail the check to Auto–Owners' home office in Lansing, Michigan, where it would be deposited.

While Wulf worked for Auto–Owners, Auto–Owners required its branch managers to review both open and closed claims files every six months. The branch managers would look for any errors in the files and would also examine whether subrogation or salvage claims should be pursued or, if they had been pursued, were being handled properly. Once a file was permanently closed, it would be sent to Auto–Owners' home office for storage. Senior claims examiners at the home office performed random audits on closed files, and would also review all files that involved claims over a certain threshold amount. During these reviews, the senior claims examiners would assess whether subrogation and salvage were handled properly.

Periodically, Auto–Owners branch managers received salvage sheets from salvage buyers. The salvage sheet identified the vehicles that had been received at the salvage yard, listed the claim number, and stated whether the vehicle had been sold. It was Auto–Owners' policy to reconcile lists that identified when salvage was due with the salvage sheets.

In 1991, Wulf opened a sole proprietorship account ("the Account") at a Bank One branch in Bloomington. The name on the Account was "Auto Owners Insurance," and Wulf was the only signer on the Account. Bank One's policies and procedures for opening a new account specified that the customer must produce identification and a social security number. In opening a business account, Bank One required the customer to provide a number of legal documents in order to establish ownership. These documents included, where applicable, an assumed business name certificate, a certificate of incorporation, and a corporate resolution.

Wulf stated that in opening the Account, Bank One did not require him to produce any documents. He specifically related that Bank One did not ask for the articles of incorporation, a resolution from the board of directors, or any other document authorizing him to open the account. During discovery, Bank One stated that it was "unable to locate any documents relating to the opening of the account." Appellant/Plaintiff's Appendix at 481. At his deposition, Wulf testified that he did not have permission or authorization from Auto–Owners to open the Account.

Shortly after opening the Account, Wulf began stealing subrogation and salvage checks. To do this, Wulf would pursue either a subrogation or salvage claim but not leave a notation about this in the claim file. Without a notation in the file, no one working at Auto–Owners' Indianapolis branch anticipated the arrival of a subrogation or salvage check. When a subrogation or salvage check arrived in the mail, the clerical staff would attach the check to the claim file and give the file to Wulf. Wulf then would pocket the check. The checks were made payable to Auto–Owners and had payee names such as "Auto–Owners Insurance Company," "Auto–Owners Insurance," "Auto–Owners Insurance Co.," and "Auto–Owners Insurance as Subrogee of—." Id. at 558–71. Wulf fraudulently endorsed the checks using a stamp he had specially made that said, "Auto Owners Insurance Deposit Only." Id. at 295. Wulf deposited the fraudulently endorsed checks into the Account even though he had no authority to sign or endorse checks on behalf of Auto–Owners. Bank One accepted each of the checks deposited by Wulf.

Auto–Owners discovered Wulf' s illegal conduct in 1998. After conducting an investigation, Auto–Owners learned that Wulf embezzled over 106 checks totaling

more than $545,000. Criminal charges were later filed against Wulf, who pled guilty to two counts of forgery and one count of theft.

On October 30, 1998, Auto–Owners filed suit against Bank One alleging that Bank One was negligent. It later amended its complaint to add a claim for conversion under Indiana Code section 26–1–3.1–420(a). Bank One filed an answer to Auto–Owners' complaint raising several affirmative defenses including the statute of limitations. On December 3, 2003, Auto–Owners filed a partial motion for summary judgment on Bank One's statute of limitations defense. Bank One filed a motion for summary judgment on both of Auto–Owners' causes of action and a response to Auto–Owners' motion for partial summary judgment on March 12, 2004. The trial court held a hearing on both parties' motions for summary judgment on September 21, 2005. On October 14, 2005, the trial court issued an order denying Auto–Owners' motion for partial summary judgment, granting Bank One's motion for summary judgment, entered judgment in favor of Bank One, and dismissed Auto–Owners' complaint. This appeal ensued.

### Discussion and Decision

Auto–Owners argues that the trial court erred in granting Bank One's motion for summary judgment and in denying Auto–Owners' motion for partial summary judgment. We disagree.

### I. Standard of Review

When we determine the propriety of an order granting summary judgment, we use the same standard of review as the trial court. *Ryan v. Brown*, 827 N.E.2d 112, 116 (Ind.Ct.App.2005). Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). "The party moving for summary judgment has the burden of making a prima facie showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Ryan*, 827 N.E.2d at 117. If the moving party meets these two requirements, then the burden shifts to the non-moving party to show the existence of a genuine issue of material fact by setting forth specifically designated facts. *Id.* "We must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmoving party, and resolve all doubts against the moving party." *Id.* Summary judgment will be affirmed if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court. *Inlow v. Inlow*, 797 N.E.2d 810, 815–16 (Ind.Ct.App.2003), *trans. denied.*

### II. Statute of Limitations

The parties first dispute whether Auto–Owners' claims are barred by the statute of limitations. Auto–Owners filed a motion for partial summary judgment on Bank One's statute of limitations defense arguing that its claims were not barred by the statute of limitations because the discovery rule applied. In its motion for summary judgment, Bank One argued that the discovery rule did not apply, and that it was entitled to summary judgment because Auto–Owners' claims were barred by the statute of limitations. The trial court denied Auto–Owners' partial motion for summary judgment and granted Bank One's motion for summary judgment. Auto–Owners contends that the statute of limitations does not bar its claims, and therefore, the trial court erred to the extent that it granted Bank One's motion for summary judgment on this basis.

The parties agree that the applicable statute of limitations in this case is found in Indiana Code section 26–1–3.1–118(g). That statute provides that an action "for conversion of an instrument, for money

had and received, or like action based on conversion ... must be commenced within three (3) years after the cause of action accrues." Ind.Code § 26–1–3.1–118(g).

■ Auto–Owners argues that its negligence and conversion claims are not barred by this statute of limitations because the discovery rule applies. The discovery rule provides that "a cause of action accrues when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the act of another." *UNR–Rohn, Inc., a Div. of UNR Indus., Inc. v. Summit Bank of Clinton County,* 687 N.E.2d 235, 240 (Ind.Ct.App.1997), *trans. denied.* Auto–Owners notes that it did not discover Wulf' s illegal conduct until 1998. If the discovery rule applies to Indiana Code section 26–1–3.1–118(g), Auto–Owners cause of action accrued in 1998, and it then had three years to file suit against Bank One. Auto–Owners asserts that it timely filed its complaint on October 30, 1998. Therefore, Auto–Owners concludes that its claims against Bank One are not barred by the statute of limitations, and that Bank One is not entitled to summary judgment on this ground.

Auto–Owners principally relies upon *UNR–Rohn* to support its contention that the discovery rule applies here. In that case, UNR–Rohn employed Robert Pearson as an administrative manager. Pearson was responsible for conducting certain banking transactions for UNR–Rohn. Between 1984 and April of 1991, Pearson embezzled hundreds of third-party checks made payable to UNR–Rohn. Pearson either deposited or cashed these checks at the Summit Bank of Clinton County ("the bank"). UNR–Rohn discovered Pearson's illegal conduct in April of 1991. On February 11, 1993, UNR–Rohn filed a complaint against the bank alleging that the bank committed conversion under Indiana

Code section 26–1–3–419, which at that time was part of Indiana's Uniform Commercial Code ("U.C.C.") but has since been repealed. The bank filed a motion for summary judgment arguing that UNR–Rohn's claims were barred by the statute of limitations. The trial court rejected the bank's statute of limitations defense, and the bank filed an appeal solely on that issue.

We began by noting that the parties agreed that "the two-year statute of limitations for injury to personal property under Ind.Code § 34–1–2–2(1) applies to UNR–Rohn's conversion claim under I.C. 26–1–3–419." *UNR–Rohn,* 687 N.E.2d at 240. In a footnote we stated, "During the period in question, Indiana's version of the U.C.C. did not specify a statute of limitations for conversion of negotiable instruments." *Id.* at 240 n. 3. We pointed out that since 1992, in determining when a cause of action accrues under Indiana Code section 34–1–2–2, we consistently applied the discovery rule. *Id.* at 240. We also noted that in *Wehling v. Citizens Nat. Bank,* 586 N.E.2d 840, 843 (Ind.1992), our supreme court expanded the application of the discovery rule to all tort actions. *Id.* Despite recognizing that no Indiana case had applied the discovery rule to an action for conversion of a negotiable instrument and that the vast majority of jurisdictions had concluded that the discovery rule should not apply to an action for conversion of a negotiable instrument, we stated:

[T]he holding of *Wehling* and the reasoning inherent in it logically applies to all tort actions. To carve out an exception to the discovery rule in injuries to personal property involving conversion of negotiable instruments would be wholly incongruous and inconsistent with Indiana's system of jurisprudence.

*Id.* at 241. We noted that Pearson stole checks from UNR–Rohn from 1984 to

1991. UNR–Rohn did not become suspicious of Pearson until April of 1991. We determined that these facts were "sufficient to raise a factual dispute regarding when UNR–Rohn could have, in the exercise of ordinary diligence, discovered the conversion of the checks." *Id.* Therefore, we concluded that the trial court properly denied the bank's motion for summary judgment based on the statute of limitations. *Id.*

*UNR–Rohn* is distinguishable. In *UNR–Rohn*, Indiana's version of the U.C.C. did not specify a statute of limitations for claims for conversion of a negotiable instrument. However, Indiana has now adopted a statute of limitations for claims involving conversion of a negotiable instrument in Indiana Code section 26–1–3.1–118(g), and we are bound to apply that statute here.

■ Auto–Owners argues that we should read the discovery rule into Indiana Code section 26–1–3.1–118(g). We refuse to do this because it would be contrary to the intent of our legislature. The specific language of Indiana Code section 26–1–3.1–118(g) does not expressly mention the discovery rule or use the language of that rule. Yet, other portions of Indiana's U.C.C., such as Indiana Code sections 26–1–3.1–417(f), 26–1–4–207(e), and 26–1–4–208(f), use the language of the discovery rule. Pursuant to the principle *expressio unius est exclusio alterius,* which means that the enumeration of certain things in a statute necessarily implies the exclusion of all others, *Brandmaier v. Metro. Dev. Comm'n of Marion County,* 714 N.E.2d 179, 180 (Ind.Ct.App.1999), *trans. denied,* our legislature's use of the discovery rule in some portions of the U.C.C. and not in Indiana Code section 26–1–3.1–118(g) indicates that the legislature did not intend for the discovery rule to apply to claims involving the conversion of a negotiable instrument.

Additionally, we note that a majority of jurisdictions have refused to apply the discovery rule to claims for conversion of a negotiable instrument. *See John Hancock Fin. Servs., Inc. v. Old Kent Bank,* 346 F.3d 727, 733–34 (6th Cir.2003); *Menichini v. Grant,* 995 F.2d 1224, 1229–32 (3d Cir.1993); *Kuwait Airways Corp. v. American Sec. Bank, N.A.,* 890 F.2d 456, 460–63 (D.C.Cir.1989); *New Jersey Lawyers' Fund for Client Protection v. Pace,* 186 N.J. 123, 892 A.2d 661, 662 (2006); *Hollywood v. First Nat'l Bank of Palmerton,* 859 A.2d 472, 482 (Pa.Super.Ct.2004); *Pero's Steak and Spaghetti House v. Lee,* 90 S.W.3d 614, 624 (Tenn.2002); *Brennan v. Edward D. Jones & Co.,* 245 Mich.App. 156, 626 N.W.2d 917, 920 (2001); *Haddad's of Illinois, Inc. v. Credit Union 1 Credit Union,* 286 Ill.App.3d 1069, 222 Ill.Dec. 710, 678 N.E.2d 322, 325–26 (1997); *Palmer Mfg. & Supply, Inc. v. BancOhio Nat'l Bank,* 93 Ohio App.3d 17, 637 N.E.2d 386, 390–91 (1994); *Husker News Co. v. Mahaska State Bank,* 460 N.W.2d 476, 479 (Iowa 1990).

Two reasons are commonly given for adopting this position. The first rationale is that "application of the discovery rule would be inimical to the underlying purposes of the UCC, including the goals of certainty of liability, finality, predictability, uniformity, and efficiency in commercial transactions." *Rodrigue v. Olin Employees Credit Union,* 406 F.3d 434, 445 (7th Cir.2005). A second reason given by courts for adopting this position is that a claim for conversion of negotiable instruments is unlike other claims to which the discovery rule has been applied. For example, the discovery rule generally has been applied where the actual injury does not manifest itself until years after the tortious conduct

occurred and long after the statute of limitations expired. In contrast, the tort of conversion is complete and the injury occurs at the moment the tortfeasor appropriates the plaintiff's property to his or her own use or benefit by exercising dominion over it in violation of the true owner's rights. When the property converted is a negotiable instrument, the damage is done, and the tort is complete when the instrument is negotiated, regardless of the plaintiff's ignorance of the conversion.

*Pero's Steak and Spaghetti House,* 90 S.W.3d at 623 (citations omitted).

■ We believe that both of these rationales are sound, and conclude that the discovery rule should not apply to claims for conversion of a negotiable instrument. Here, Wulf began stealing subrogation and salvage checks from Auto–Owners in 1991, and Auto–Owners did not discover Wulf's conduct until 1998. Auto–Owners filed suit against Bank One on October 30, 1998. Any cause of action Auto–Owners may have had accrued at the time each check was negotiated by Wulf. Because Auto–Owners' causes of action are subject to the three-year statute of limitations provided in Indiana Code section 26–1–3.1–118(g), Auto–Owners' claims based on any checks deposited before October 30, 1995, are barred by the statute of limitations.

### III. Negligence and Conversion Claims

We next consider whether the trial court properly granted Bank One summary judgment with respect to Auto–Owners' claims based on checks negotiated after October 30, 1995. Auto–Owners argues that Bank One committed negligence under either Indiana Code section 26–1–3.1–405 or Indiana Code section 26–1–3.1–406, and that it committed conversion under Indiana Code section 26–1–3.1–420(a). Bank One contends that it is entitled to summary judgment on Auto–Owners' negligence and conversion claims because it proved the defense available to it under Indiana Code section 26–1–3.1–405(b), and because it exercised ordinary care in taking the checks negotiated by Wulf.

Indiana Code section 26–1–3.1–405(b) provides as follows:

For the purpose of determining the rights and liabilities of a person who, in good faith, pays an instrument or takes it for value or for collection, if an employer entrusted an employee with responsibility with respect to the instrument and the employee or a person acting in concert with the employee makes a fraudulent endorsement of the instrument, the endorsement is effective as the endorsement of the person to whom the instrument is payable if it is made in the name of that person. If the person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the person bearing the loss proves that the failure to exercise ordinary care substantially contributed to the loss.

The first sentence of section 405(b) provides a defense for Bank One. The official U.C.C. comment number one for Indiana Code section 26–1–3.1–405 states that the first sentence of section 405(b) "adopts the principle that the risk of loss for fraudulent indorsements by employees who are entrusted with responsibility with respect to checks should fall on the employer rather than the bank that takes the check or pays it, if the bank was not negligent in the transaction." Liability is placed on the employer based on the belief that the em-

ployer is in a far better position to avoid the loss by care in choosing employees, in supervising them, and in adopting other measures to prevent forged indorsements on instruments payable to the employer or fraud in the issuance of instruments in the name of the employer. Ind.Code § 26–1–3.1–405 cmt. 1.

However, Auto–Owners argues that even if Bank One can prove its defense, Auto–Owners still has the opportunity under section 405(b) to shift a portion of its loss to Bank One. The second sentence of section 405(b) adopts a system of comparative negligence. *Duong v. Bank One, N.A.*, 169 S.W.3d 246, 250 (Tex.App.2005). Under this portion of section 405(b), if the bank failed to exercise ordinary care, the employer is allowed to shift loss to the bank to the extent the bank's failure to exercise ordinary care contributed to the loss. Ind.Code § 26–1–3.1–405 cmt. 1.

We begin by considering whether Bank One proved its defense under section 405(b).

A. Bank One's Section 405(b) Defense

In order to prove its defense under section 405(b), Bank One must show (1) that Wulf was Auto–Owners' employee; (2) that Auto–Owners entrusted Wulf with responsibility with respect to subrogation and salvage checks; (3) that Wulf fraudulently endorsed subrogation and salvage checks; (4) that the endorsement was made in the name of the person to whom the instrument was payable; and (5) that Bank One took the fraudulently endorsed subrogation or salvage checks in good faith. The parties do not dispute that Wulf was Auto–Owners' employee, and that he fraudulently endorsed subrogation and salvage checks.

■ Bank One argues that Auto–Owners entrusted Wulf with responsibility for subrogation and salvage checks. Indiana Code section 26–1–3.1–405(a)(3) defines "responsibility" as follows:

(3) "Responsibility" with respect to instruments means authority:

(A) to sign or endorse instruments on behalf of the employer;

(B) to process instruments received by the employer for bookkeeping purposes, for deposit to an account, or for other disposition;

(C) to prepare or process instruments for issue in the name of the employer;

(D) to supply information determining the names or addresses of payees of instruments to be issued in the name of the employer;

(E) to control the disposition of instruments to be issued in the name of the employer; or

(F) to act otherwise with respect to instruments in a responsible capacity. "Responsibility" does not include authority that merely allows an employee to have access to instruments or blank or incomplete instrument forms that are being stored or transported or are part of incoming or outgoing mail or similar access.

Here, Wulf was responsible for all aspects of subrogation and salvage claims. When subrogation or salvage checks arrived at Auto–Owners' Indianapolis branch, the clerical staff removed the checks from the mail, attached them to the appropriate file, and gave the file to the claims representative working on that claim. Auto Owners maintained no check log or other record prior to giving the check to the claims representative. When Wulf received a subrogation or salvage check, he was supposed to make a notation in the file to indicate that the check was received. Wulf was then supposed to complete a transmittal form for the check, and return the check to the clerical staff who would mail the check to Auto–Owners'

home office in Michigan. These facts reveal that Auto–Owners entrusted Wulf with responsibility for subrogation and salvage checks in that he was supposed to process these checks for disposition, and that he was supposed to act in a responsible capacity with respect to these instruments.

Additionally, during the period that Wulf worked for Auto–Owners, Wulf's branch manager was required to review each of Wulf's files every six months. While conducting these reviews, the branch manager considered whether subrogation or salvage should be pursued, or if they had been pursued, whether it was done properly. After a file was permanently closed and sent to Auto–Owners' home office, senior claims examiners performed random audits on files and would also review all files that involved claims over a certain threshold amount. During these reviews, the senior claims examiners would assess whether subrogation and salvage were handled properly. These oversight procedures would not have been necessary if claims representatives like Wulf were not entrusted by Auto–Owners with responsibility for subrogation and salvage checks. Therefore, we conclude that Auto–Owners entrusted Wulf with responsibility for subrogation and salvage checks.

■ Bank One next argues that Wulf endorsed the subrogation and salvage checks in the name of the person to whom the instrument was payable. Indiana Code section 26–1–3.1–405(c) states:

> [A]n endorsement is made in the name of the person to whom an instrument is payable if:
> (1) it is made in a name substantially similar to the name of that person; or
> (2) the instrument, whether or not endorsed, is deposited in a depositary bank to an account in a name substantially similar to the name of that person.

Here, Wulf endorsed the subrogation and salvage checks in a name identical to or substantially similar to the name of the payees on the checks. The checks in question had payee names such as "Auto–Owners Insurance Company," "Auto–Owners Insurance," "Auto–Owners Insurance Co.," and "Auto–Owners Insurance as Subrogee of—." Appellant/Plaintiff's App. at 558–71. Wulf fraudulently endorsed the checks using a stamp that he had specially made that said, "Auto Owners Insurance Deposit Only." *Id.* at 295. Wulf also deposited the checks into an account that had a name substantially similar to the name of the payee on the checks. The name of the Account was "Auto Owners Insurance," and the subrogation and salvage checks were made payable to "Auto–Owners Insurance Company," "Auto–Owners Insurance," "Auto–Owners Insurance Co.," and "Auto–Owners Insurance as Subrogee of—." *Id.* at 558–71.

However, Auto–Owners argues that Wulf did not endorse the subrogation and salvage checks in a name substantially similar to the name of the person to whom the instrument was payable. Auto–Owners relies on *In re McMullen Oil Co.*, 251 B.R. 558 (Bankr.C.D.Cal.2000), to support its position. In that case, the court concluded that "McMullen Oil Co. Pension Plan" was not substantially similar to the name of the payee on the checks, which was "McMullen Oil Co." *Id.* at 576. The court, though, indicated that names like "ABC, Inc.," "ABC Corp.," "ABC Co.," or "ABC Co., Inc." would be considered substantially similar to each other. *Id.* at 575.

The facts presented here are more akin to those situations where the *McMullen Oil* court indicated that the names would be considered substantially similar. The name of the Account was "Auto Owners Insurance," and Wulf endorsed the checks

by stamping them "Auto Owners Insurance Deposit Only." The payee names on the checks were "Auto–Owners Insurance Company," "Auto–Owners Insurance," "Auto–Owners Insurance Co.," and "Auto–Owners Insurance as Subrogee of—." The name of the Account and the endorsement on the checks did not contain any extra words like "pension plan" that would obviously distinguish it from the payee names on the checks. Therefore, we conclude that Bank One has shown that Wulf endorsed the subrogation and salvage checks in a name substantially similar to the name of the person to whom the instruments were payable.

Bank One also argues it took the fraudulently endorsed subrogation and salvage checks in good faith. "Good faith" means "honesty in fact and the observance of reasonable commercial standards of fair dealing." Ind.Code § 26–1–3.1–103(a)(4). "A finding of bad faith is warranted if a bank for an extended period of time and despite bank policies dictating otherwise permits a person to deposit stolen checks to an account that does not belong to the payee." *Continental Cas. Co. v. Fifth/Third Bank*, 418 F.Supp.2d 964, 973 (N.D.Ohio 2006). Nevertheless, "a bank's failure to follow commercially reasonable banking procedures or to comply with its own policies generally will not constitute a lack of good faith." *Shearson Lehman Bros., Inc. v. Wasatch Bank*, 788 F.Supp. 1184, 1194 (D.Utah 1992). "Accordingly, absent some indication that the bank has acted in a subjectively dishonest or intentional manner in improperly accepting a check over a forged indorsement, the bank will be held to have acted in good faith." *Id.*

Here, between 1991 and 1998, Bank One accepted forged checks from Wulf for deposit. In doing this, though, there is no evidence that Bank One violated its own policies or acted contrary to reasonable commercial standards of fair dealing. The checks Wulf deposited were payable to "Auto–Owners Insurance Company," "Auto–Owners Insurance," "Auto–Owners Insurance Co.," and "Auto–Owners Insurance as Subrogee of—." Wulf endorsed the checks using a specially made stamp that said, "Auto Owners Insurance Deposit Only." The checks were deposited into an account named "Auto Owners Insurance." The name of the Account and the payee names on the checks were substantially similar. Reasonable commercial standards of fair dealing permit banks to accept checks for deposit that are payable to a name that is the same or substantially similar to the name on an account. Because the name of the Account and the endorsements on the checks were substantially similar to the payee names on the checks, Bank One had no reason to believe that the checks Wulf deposited into the Account were forged or stolen. This indicates that Bank One did not act in a subjectively dishonest or intentional manner when it took the checks for deposit. Therefore, we conclude that Bank One took the checks deposited by Wulf in good faith. *See Continental Cas. Co.*, 418 F.Supp.2d at 978 (although bank took for deposit checks for large sums over a protracted period of time, court concluded bank took checks in good faith because the evidence did not show that bank grossly violated its own policies or general banking procedures and because there was no evidence indicating bank's behavior resulted from a deliberate decision to ignore obvious fraud).

Because Bank One has shown that Auto–Owners entrusted Wulf with responsibility for subrogation and salvage checks, that the checks were endorsed in a name substantially similar to the name of the person to whom the instruments were pay-

able, and that Bank One took the checks in good faith, Bank One has proven its defense under section 405(b).

### B. Comparative Fault under Section 405(b)

As previously stated, section 405(b) adopts a system of comparative negligence. *Duong,* 169 S.W.3d at 250. Although Bank One has proven its defense under section 405(b), under the second sentence of section 405(b), Auto–Owners has the opportunity to shift a portion of its loss to Bank One if it can show (1) that Bank One failed to exercise ordinary care in taking the checks for deposit; and (2) that Bank One's failure to exercise ordinary care substantially contributed to Auto–Owners' loss.

Indiana Code section 26–1–3.1–103(a)(7) defines the term "ordinary care" as follows:

> "Ordinary care" in the case of a person engaged in business means observance of reasonable commercial standards prevailing in the area in which the person is located, with respect to the business in which the person is engaged. In the case of a bank that takes an instrument for processing for collection or payment by automated means, reasonable commercial standards do not require the bank to examine the instrument if the failure to examine does not violate the bank's prescribed procedures and the bank's procedures do not vary unreasonably from general banking usage not disapproved by IC 26–1–3.1 or IC 26–1–4.

■■■ "[C]ourts have found certain egregious practices by banks to violate reasonable commercial standards as a matter of law." *Continental Cas. Co.,* 418 F.Supp.2d at 978. Practices involving clearly unreasonable conduct on the part of a bank include: payment of checks with missing endorsements, failure to respect restrictive endorsements, failure to inquire into the authority to sign of one purporting to be an agent, and allowing deposit of a check indorsed by a corporate payee into a personal account. *Id.* (quoting *Govoni & Sons Constr. Co., Inc. v. Mechanics Bank,* 51 Mass.App.Ct. 35, 742 N.E.2d 1094, 1103 (2001)).

■■■ Auto–Owners first argues that Bank One did not exercise ordinary care because it failed to comply with its own policies and procedures and reasonable commercial standards by not obtaining proper documentation from Wulf to open the Account. Bank One's policies and procedures required a customer opening a business account to provide a number of legal documents in order to establish ownership. These documents included, where applicable, an assumed business name certificate, a certificate of incorporation, and a corporate resolution. Auto–Owners notes that Wulf testified that Bank One did not require him to present any documents when he opened the Account. Additionally, during discovery, Bank One was unable to locate any documents relating to the opening of the account.

However, the plain language of Indiana Code section 26–1–3.1–405(b) states that a party is only liable for a portion of the loss if it "fails to exercise ordinary care in *paying or taking* the instrument...." (Emphasis added). Section 405(b) makes no mention of a party failing to exercise ordinary care in opening a bank account. Therefore, Bank One's actions in opening the Account do not bear on whether it exercised ordinary care in taking the checks from Wulf for deposit.

This conclusion is supported by the decision reached by the Alabama Supreme Court in *Smith v. AmSouth Bank, Inc.,* 892 So.2d 905 (Ala.2004). In that case, Smith, a business owner, alleged that Am-

South failed to exercise ordinary care in taking for deposit certain embezzled checks. Smith offered the affidavit of Don Coker, an independent banking consultant who claimed to be familiar with banking practices. The Alabama Supreme Court noted that the only specific allegations Coker made were that AmSouth's policies concerning the opening of bank accounts were deficient. *Id.* at 12. The court noted that Coker's allegations did not concern AmSouth's policies on accepting checks into accounts, and thus, did not show that AmSouth failed to exercise ordinary care. *Id.* Thus, Bank One's actions in opening the Account do not show that it failed to exercise ordinary care.

 Auto–Owners next argues that Bank One failed to exercise ordinary care because it did not observe reasonable commercial standards when it deposited corporate checks into a non-corporate account. The Account was opened as a sole proprietorship business account and was named "Auto Owners Insurance." Despite this, Bank One allowed Wulf to deposit checks into the account with the following payee names: "Auto–Owners Insurance Company," "Auto–Owners Insurance," "Auto-Owners Insurance Co.," or "Auto–Owners Insurance as Subrogee of—." Auto–Owners contends that checks made payable to "Auto–Owners Insurance Company" or "Auto–Owners Insurance Co." should have been recognizable to a bank teller as checks made out to a corporation and not a sole proprietorship. Based on this, Auto–Owners concludes that Bank One should have inquired into the checks and Wulf's authority to negotiate these instruments, and that its failure to do this indicates that Bank One did not exercise ordinary care.

Auto–Owners asserts that a number of cases support its position that it is contrary to reasonable commercial standards to allow an individual to deposit a check made payable to a corporation into his personal account without further inquiry. *See Clark v. Griffin,* 481 N.E.2d 170, 173 (Ind.Ct.App.1985)("[W]hen an individual cashes a check made payable to a corporation depositing it in his personal account, normal and reasonable commercial standards require the bank to inquire further to determine whether the individual has the appropriate corporate authority."). *See also Lou Levy & Sons Fashions, Inc. v. Romano,* 785 F.Supp. 1163, 1166 (S.D.N.Y.1992)("In the absence of exceptional circumstances, the failure of a bank to inquire when an individual presents a check made payable to a corporate payee for deposit to his personal account is deemed an unreasonable commercial banking practice as a matter of law."); *Allied Ins. Center, Inc. v. Wauwatosa Sav. and Loan Ass'n,* 200 Wis.2d 369, 546 N.W.2d 544, 548 (Ct.App.1996)(trial court properly concluded that bank acted in commercially unreasonable manner by depositing checks payable to corporate payees into an individual's personal account without further inquiry); *Martin Glennon, Inc. v. First Fidelity Bank, N.A.,* 279 N.J.Super. 48, 652 A.2d 199, 203–04 (App.Div.1995)(pursuant to New Jersey law it is negligent for a bank to permit the deposit of a check payable to a corporation into an individual account); *Aetna Cas. and Sur. Co. v. Hepler State Bank,* 6 Kan.App.2d 543, 630 P.2d 721, 728 (Ct.App.1981)(trial court properly concluded that bank acted in commercially unreasonable manner by depositing checks payable to a corporate payee into a personal account without inquiring as to depositor's authority to do so).

 However, each of the above cited cases relied on by Auto–Owners is factually distinguishable because in those cases checks made payable to corporate payees were deposited into personal bank accounts. Here though, Wulf did not de-

posit the stolen subrogation and salvage checks into his personal account, but into a sole proprietorship account. The above cited cases indicate that it is contrary to "reasonable commercial standards" to deposit checks payable to a corporate payee into a personal account. Conversely, reasonable commercial standards permit banks to accept business checks for deposit into a business account that has a name substantially similar to the payee name on the check. Here, the name of the Account and the payee names on the checks were substantially similar.

Furthermore, just because a business uses the word "company" or the designation "Co." in its name does not necessarily mean it is a corporation. Checks made payable to "Auto–Owners Insurance Company" or "Auto–Owners Insurance Co.," that did not contain the designation "Corp." or "Inc.," may not have been recognizable to a bank teller as being checks made out to corporation. Bank One's actions in this regard do not indicate that it failed to exercise ordinary care in taking the checks. Therefore, we conclude that Auto–Owners has not shown the existence of a genuine issue of material fact as to whether Bank One exercised ordinary care in taking the checks for deposit.

■ We also conclude that Auto–Owners has not raised a genuine issue of material fact concerning whether Bank One's failure to exercise ordinary care substantially contributed to Auto–Owners' loss. The facts here instead suggest that the proximate cause of Auto–Owners' loss was its own negligence. Auto–Owners entrusted Wulf with responsibility for and access to subrogation and salvage checks. Although Wulf abused the trust Auto–Owners placed in him by stealing checks, Auto–Owners could have discovered Wulf's conduct. Wulf's branch manager was supposed to review his claims files every six months, and permanently closed claims files were reviewed by senior claims examiners at Auto–Owners' home office. Despite these reviews, Wulf's illegal conduct was not discovered. Auto–Owners' branch managers received salvage sheets listing items sold for salvage. Wulf's branch managers could have used the salvage sheets to learn that Wulf was stealing salvage checks, or when Auto–Owners received subrogation and salvage checks in the mail it could have logged in the checks before they were sent to the claims representatives so that a paper trail was clear. Had Auto–Owners made use of the resources available, it could have determined that Wulf was stealing subrogation and salvage checks.

Therefore, because Bank One has proven its defense under section 405(b) and because Auto–Owners has not shown the existence of a genuine issue of material fact regarding whether Bank One failed to exercise ordinary care in taking the checks for deposit, the trial court properly granted Bank One summary judgment on Auto–Owners' negligence and conversion claims for those checks negotiated after October 30, 1995.[2]

### Conclusion

The discovery rule does not apply to claims for conversion of a negotiable in-

---

**2.** Auto–Owners also alleged that Bank One was negligent under Indiana Code section 26–1–3.1–406. In order for Auto–Owners to prove that Bank One acted negligently under that statute, it must show that Bank One failed to exercise ordinary care in taking the checks for deposit. *See* Ind.Code § 26–1–3.1–406(b).

We have already determined that Auto–Owners did not raise a genuine issue of material fact concerning whether Bank One failed to exercise ordinary care. Therefore, Bank One was entitled to summary judgment on Auto–Owners negligence claim under Indiana Code section 26–1–3.1–406.

strument. Auto–Owners' claims for negligence and conversion based on any checks negotiated before October 30, 1995, are barred by the statute of limitations. Bank One established the defense available to it under Indiana Code section 26–1–3.1–405(b). Auto–Owners has not shown the existence of a genuine issue of material fact regarding whether Bank One failed to exercise ordinary care in taking the checks for deposit. Therefore, the trial court's order granting Bank One's motion for summary judgment and denying Auto–Owners' motion for partial summary judgment is affirmed.

Affirmed.

SHARPNACK, J., and BAILEY, J., concur.